ROBERT MICHAEL RISTROPH AND MARIE GIBBENS RISTROPH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ristroph v. Commissioner
Docket No. 17680-79
United States Tax Court
T.C. Memo 1981-509; 1981 Tax Ct. Memo LEXIS 244; 42 T.C.M. (CCH) 1075; T.C.M. (RIA) 81509; September 14, 1981. Marie Gibbens Ristroph, pro se. Carmen J. Santamaria, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined an $ 898.24 deficiency in petitioners' 1977 income tax return. The sole issue for decision is whether certain payments received by Robert M. Ristroph while participating in the surgery residency program at the Baylor College of Medicine qualified as scholarship or fellowship grants excludible from gross income. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Robert M. ("Petitioner") and Marie G. Ristroph, husband and wife, resided in Houston, Texas, when they filed their petition. In June 1975, petitioner graduated from Baylor University College of Medicine. Upon graduation petitioner enrolled in the surgery *245 residency program at the Baylor University Graduate School of Medicine. [1] The stated purpose of the Baylor residency program is set forth in its "Policy on House Staff handbook: The graduate medical training programs of Baylor College of Medicine and its affiliated hospitals make available education and training of the highest quality. Baylor and the affiliated institutions provide accredited educational and training experience consistent with the guidelines and standards set forth in the Essentials of Approved Residencies of the AMA. Because education and training are the principal objectives of the program, the relationships established between faculty and trainees are based upon mutual respect and collaboration thoward those objectives. Responsibility in patient care if of prime importance in providing high quality graduate training and thus as the house officer progresses in training and competence his responsibilities in care of patients will increase. The surgery residency program is five years in duration with each year being termed a "level." From January 1 through June 30, 1977, petitioner *246 occupied a Level II position in the surgery residency program, and from July 1 through December 31, 1977, he occupied a Level III position. Petitioner received a stipend from Baylor College of Medicine (or one of its affiliated hospitals) in connection with his participation in the surgery residency program at all times during which he was enrolled in the program. The amount of the stipend increased with each additional year or "level" of residency; it was not based on individual merit or financial need. At any point in time petitioner's stipend equaled those received by every other resident physician within the same "level." During 1977 petitioner performed his duties as resident physician at Ben Taub General Hospital, Methodist Hospital and the Veterans Administration Hospital. [2] In the performance of his duties, petitioner spent 36 of every 48-hour period at these hospitals. The duties performed by petitioner in 1977 and the percentage of his work week spent on each activity are reflected in the following chart: Activity
Per Cent of Week [3]
Observation of surgical procedures
20.6
Assisting in surgery
27.7
Direct pre-operative patient care
4.8
Direct post-operative patient care
15.9
Attending lectures
1.6
Reading assigned readings
2.4
Preparing reports on assigned
readings
2.4
Presenting reports on assigned
readings
0.8
Making rounds
9.5
Filling out forms re patients
6.3
Ordering lab tests and analyzing
results
7.9
[4] 99.4
*247 Petitioner performed all of the above duties under the tutelage and supervision of one or more faculty members of the Baylor College of Medicine, Department of Surgery. In 1977 petitioner received a total stipend of $ 12,162.76 from Baylor College of Medicine and its affiliated hospitals. The following deductions were made from the total stipend paid to petitioner: Federal
Payor
Gross Stipend
Income Tax
F.I.C.A.
Baylor College of
Medicine
$ 6,491.48
$ 537.95
$ 379.76
Veterans Administration
5,671.28
422.15
331.79
These deductions were reflected on W-2 Forms issued by the payors. In addition to a stipend, Baylor College of Medicine provided petitioner with paid sick leave, paid vacation time (14 days per year), hsopitalization and free uniforms and laundry services. On their 1977 joint tax return petitioners reported gross income of $ 25,375.98. This amount consisted of Marie G. Ristroph's earnings of $ 16,813.22 as a city planner and $ 8,562.76 of petitioner's total stipend of $ 12,162.76. In his statutory notice, *248 respondent determined that the $ 3,600 excluded from petitioners' gross income, i.e., $ 12,162.76 minus $ 8,562.76, is taxable income. OPINION The sole issue in this case is whether petitioner is entitled to exclude $ 3,600 received during 1977 from Baylor College of Medicine and its affiliated hospitals (hereinafter referred to collectively as "BCM") while a resident at Ben Taub General Hospital, Methodist Hospital and the Veterans Administration Hospital, all located in Houston, Texas. Petitioner contends that the amount excluded was received by him as a fellownship grant. Respondent asserts that this amount represented compensation for services performed which is not excludible under section 117. [5] We agree with respondent. Section 117(a)(1) excludes from gross income amounts received as a scholarship at an educational institution or as a fellownship grant. Section 1.117-4(c), Income Tax Regs., specifically provides that payments made as compensation for employment services are not excludible as scholarship or fellowship grants. In upholding the validity *249 of these regulations, the Supreme Court stated that the definitions contained therein comport with "the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quidproquo from the recipients." Bingler v. Johnson, 394 U.S. 741, 751 (1969). The test to be applied is whether the primary purpose for making the payments to petitioner was to educate and train him in his individual capacity or to compensate him for services rendered. Adams v. Commissioner, 71 T.C. 477, 483-484 (1978); Weinberg v. Commissioner, 64 T.C. 771, 776 (1975). This case is one in a long line of cases dealing with the applicability of section 177 to payments received by individuals serving periods of residency in hospitals as par of the their training in the medical profession. With few exceptions, the payments have been held to be "compensation for past, present, or furture employment services," not excludible from gross income under section 117. Sec. 1.117-4(c)(1), Income Tax Regs. See, e.g., Parr v. United States, 469 F. 2d 1156 (5th Cir. 1972); *250 Burstein v. United States, 622 F. 2d 529 (Ct. Cl. 1980); Brubakken v. Commissioner, 67 T.C. 249 (1976); Weinberg v. Commissioner, supra; Dietz v. Commissioner, 62 T.C. 578 (1974); Fisher v. Commissioner, 56 T.C. 1201 (1971). But see and compare Leathers v. United States, 471 F. 2d 856 (8th Cir. 1972), cert. denied 412 U.S. 932 (1973); Bailey v. Commissioner, 60 T.C. 447 (1973); Bieberdorf v. Commissioner, 60 T.C. 114 (1973). On the basis of the evidence in this record, we conclude that the primary purpose of the payments made by BCM was to compensate petitioner for his services. During the year in issue, petitioner rendered extensive and valuable services to BCM, the effect of which was to provide a substantial quidproquo for the payments he received. See Rosenthal v. Commissioner, 63 T.C. 454, 459 (1975). Among his many duties, petitioner provided pre-operative and post-operative patient care, assisted in surgery, prepared medical histories and other patient forms, made rounds, and ordered lab tests *251 and analyzed their results. [6] These duties occupied approximately 72 percent of petitioner's time spent in the residency program. Although petitioner's activities were performed under the tutelage and supervision of faculty members of BCM's Department of Surgery, this is certainly not inconsistent with his receiving compensation for those activities. Brubakken v. Commissioner, supra at 257. Besides the nature and extent of petitioner's services, there are other factors which support the conclusion reached herein. The amount of the stipend paid to petitioner was not based on financial need, as is usually true of scholarship or fellowship grants, but was based only on his "level" or year of residency. See Rosenthal v. Commissioner, supra at 460; Proskey v. Commissioner, 51 T.C. 918, 924 (1969). All *252 similarly experienced residents at BCM were paid the same yearly stipend. Furthermore, BCM withheld income and social security taxes from the amounts paid petitioner. See Adams v. Commissioner, supra at 487. In addition, petitioner received 14 days' vacation leave, paid sick leave, medical and malpractice insurance and free uniforms. These fringe benefits are indicative of an employment relationship. See Rosenthal v. Commissioner, supra at 460; Anderson v. Commissioner, 54 T.C. 1547, 1552 (1970). [7]
In support of his position, petitioner emphasizes the educational aspect of the residency program. We have no doubt that the residency program provided petitioner with valuable training and experience. Yet, this fact alone does not convert a payment which is in the nature of compensation into a fellowship grant. Proskey v. Commissioner, supra at 924-925. To reflect the foregoing, Decision will be entered for the respondent *253 . Footnotes
1. Petitioner successfully completed the surgery residency program in 1980.↩
2. All these hospitals participate in the residency program of Baylor College of Medicine.↩
3. This percentage is based upon a 126-hour week. ↩
4. Presumably the.1 percent discrepancy is due to rounding.↩
5. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
6. We harbor no doubt that petitioner's services as a resident made a valuable contribution to BCM in terms of the patient care available at the affiliated hospitals. It is in exchange for these services that petitioner received his stipend. See Fisher v. Commissioner, 56 T.C. 1201, 1213-1214↩ (1971).
7. The magnitude of petitioner's stipend is, in itself, suggestive of compensation rather than a fellowship. Brubakken v. Commissioner, 67 T.C. 249, 258↩ (1976).